## THE CORVALLIS FRUIT Co. *v.* CURRAN and others.

*(Circuit Court, D. Oregon.   August 5, 1881.)*

1. INFRINGEMENT.
    A machine for drying fruit, which employs substantially the forms and mechanical contrivances of the one patented to William S. Plummer, is an infringement of such patent, although in some respects it is an improvement upon the latter.

2. EVIDENCE.
    A patent is *prima facie* evidence that the patentee was the inventor of the thing patented, and of its novelty and utility.

Suit for Injunction.

*Wallis Nash, R. S. Strahan,* and *D. R. Kennedy,* for plaintiff.

*Cyrus A. Dolph, W. R. Bilyeu,* and *J. K. Weatherford,* for defendant.

DEADY, D. J.   On May 22, 1877, a patent, numbered 191,072, was issued to William S. Plummer "for an alleged new and useful improvement in fruit-driers," for the term of 17 years; and on October 9th of the same year a re-issue of said patent, numbered 195,948, was made to him.   The specification of the second patent states that—

"The object of this invention is to furnish an improved apparatus for drying fruit, which shall be simple in construction, convenient in use, and effective in operation, drying the fruit rapidly and evenly, and which shall be so constructed that it may be readily taken down, set up, and moved from place to place;" and that "the invention consists in the case provided in its lower part with a lining set at a little distance from its walls, the large door, the small door, the cleats or slides to receive the fruit frames or trays, the doors, and the cover and cap to allow the moisture-laden air to escape, to adapt it for use in drying fruit."

Having thus described his invention, he claims "as new"—

"The case, A, provided in its lower part with a lining, B, set at a little distance from its walls, the large door, G, the small door, H, the cleats or slides, I, to receive the fruit frames or trays, and the cover and cap, L M, to allow the moisture-laden air to escape, substantially as herein shown and described, to adapt it for use in drying fruit."

On December 1, 1879, the plaintiff, the Corvallis Fruit Company, became the lawful assignee of said patents and improvements for the county of Linn, Oregon; and on January 13, 1881, it brought this suit to restrain the defendants from infringing the same by the manufacture and sale of fruit-driers, in said county, "produced by the inventions and improvements described and claimed in said letters patent."   On June 27th an application for a provisional injunction

was heard upon the bill and sundry affidavits, and the models of the respective machines.

The Plummer fruit-drier is a wooden case, three feet six inches square and six feet two inches high, with a fixed inverted hopper-shaped cap or cover, having an aperture in which a tube is inserted to allow the steam to escape from within. In the lower part of the case is the hot-air chamber, with a lining of brick or metal at a little distance from the outer wall of the case, to facilitate the ascent of the hot air towards and upon the sides of the case, so as to dry the fruit evenly upon the edges of the trays as well as the center. The air is heated in this chamber by a box-stove or furnace, two feet long and one and a half feet wide. Above this cleats are fastened to the sides of the case, about four inches apart, upon which rest the movable trays containing the fruit to be dried, and in front of each tray is a door that opens perpendicularly, through which it can be taken out and replaced.

The defendants admit they are making and vending a fruit-drier in Linn county known as the "Thomas Fruit-drier," and claim that it was invented by the defendant Charles Thomas, and that he has applied for a patent therefor. Upon the argument it was stated, by counsel for the defendant, that a decision was daily expected upon this application, and the consideration of this motion has since been delayed to await the result of such application; but as yet nothing has been heard from it, so far as I am advised.

The Thomas drier is similar in form and operation to the Plummer drier, except that the space between the wall and lining of the hot-air chamber in the latter is carried in the former up to the top of the case by means of metal lining a little distance from the walls of the case. The effect of this is to distribute the heat more evenly through-out the drying chamber, and to produce a greater uniformity in the results. The cap or cover upon the Thomas drier is flatter than that on the Plummer, and is movable. It is also claimed that it is so shaped inside as that, when the hot air from the space between the lining and the wall of the case strikes it, it is thrown downwards and inwards upon the upper trays of fruit, which are otherwise the longer drying. The other differences are mere differences in form or mechanical contrivance, as in the shape of the stove and the door to the drying chamber, which latter is in one piece, and opens horizon-tally instead of perpendicularly. The continuation of the space for hot air on sides of the Thomas drier to the top of the case is probably a patentable improvement on the Plummer one; and it may be that

the change in the cap is also. But all the rest of the Thomas drier is substantially the same in form and operation as the Plummer one, and therefore an infringement upon the plaintiff's patent.

Upon the argument counsel for the defendants questioned the validity of the plaintiff's patent, on the ground that it lacks novelty. But the patent is *prima facie* evidence that the patentee is the inventor of the thing patented, and of the novelty and utility thereof. Curt. Pat. § 470 *et seq.; Seymour* v. *Osborne,* 11 Wall. 538.

No attempt has been made to overcome this evidence of novelty, except by the introduction of patents for drying or preserving fruit or vegetables, as follows: Nos. 121,569, December 5, 1871; 121,795, December 12, 1871; 120,253, October 24, 1871; and 4,792, March 5, 1872. But all the machines described in these, except the last, are very different in form, operation, and mechanical contrivance from the Plummer drier; in particular, as they involve the use of machinery for exhausting or blowing the air into or from the machine. The last one does rely upon the natural tendency of heated air to move upwards, as the Plummer machine does, but its mechanism and contrivance appear much more complex and costly.

It appearing, then, that the Thomas machine, although in one respect an improvement upon the Plummer one, is in other respects an infringement upon it, and that the defendants are manufacturing and selling their machine for considerably less than the price of the Plummer one, and thereby preventing the sale of the plaintiff's machine, to its manifest injury, a provisional injunction will be allowed until the final hearing or the further order of this court, upon giving bond in the sum of $2,000, with sureties, to the approval of the master.